## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TERESITA EDWARDS,

                    Plaintiff,

      vs.

GLORIA EDWARDS,
6203 Richmanor Terrace
Upper Marlboro, MD  20772
Prince George's County

and

ALFRED EDWARDS, JR.,
6203 Richmanor Terrace
Upper Marlboro, MD  20772
Prince George's County

                    Defendants.

Civil Action No.  8:12-cv-3761

**COMPLAINT**

**JURY TRIAL DEMANDED**

Teresita Edwards, by and through her undersigned counsel, files this Complaint against Gloria Edwards and Alfred Edwards, Jr. (collectively, "Defendants"), and in support thereof alleges the following:

## INTRODUCTION

1.     This Complaint is brought by Teresita Edwards (née: Maglalang) seeking justice for ten years of enslavement, imprisonment, and abuse by Defendants, who trafficked her into the United States.  In 1998, Gloria Edwards, acting on behalf of herself and her husband, Alfred Edwards, Jr., targeted and recruited Teresita Edwards to come to the United States to work as a domestic servant. Gloria Edwards falsely promised Teresita Edwards that she could earn money in the United States to

provide a better life for her family.  Instead, Teresita Edwards was trafficked into the United States.

Upon arrival, Defendants confiscated her immigration documents.  Teresita Edwards then suffered a

decade of involuntary servitude, threats of horrific harm, and violence.  She endured forced labor for

seven days per week for approximately thirteen hours or more per day, without pay.  She was falsely

imprisoned and fraudulently told that if she ran away, she would owe Defendants $20,000.

2.       Defendants forced Teresita Edwards to marry United States citizens on two separate

occasions.  One of the forced marriages was to Alfred Edwards, Jr.'s brother, David Edwards.  This

marriage caused her to share her captors' name, but it did not change her status as an uncompensated

domestic servant engaged in forced labor.

3.       Defendants have pleaded guilty to Harboring an Alien for Financial Gain and await

sentencing.  In this action, Teresita Edwards seeks compensation for her unpaid labor and the lasting

effects of the physical and emotional abuse inflicted by Defendants.

4.       Defendants' conduct constituted violations of both federal and state law for which

Defendants are liable to Teresita Edwards for damages.  She seeks to hold them civilly liable under the

Trafficking Victims Protection Act, the Fair Labor Standards Act, and Maryland state law for their

wrongful acts, as detailed below.

## JURISDICTION AND VENUE

5.       The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

because this action arises under the laws of the United States.  The Court has supplemental subject

matter jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367.

6.       Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

7.      Plaintiff Teresita Edwards is a citizen of the Republic of the Philippines and a resident of the District of Columbia.  Prior to the events that gave rise to the claims alleged in this Complaint, Plaintiff resided with her husband and eight children in the Philippines.

8.      Upon information and belief, Defendants reside at 6203 Richmanor Terrace in Upper Marlboro, Maryland.  Upon information and belief, Defendants are married to each other.  At all times relevant to the allegations set forth in this Complaint, Defendants resided within the District of Maryland.

## ALLEGATIONS OF FACT

### A.      Plaintiff's Recruitment and Move to the United States

9.      In 1998, while visiting the Philippines, Gloria Edwards, acting on behalf of herself and Alfred Edwards, Jr., targeted and recruited Teresita Edwards to come to the United States to work as a domestic servant.  At that time, Teresita Edwards spoke only Tagalog.  Gloria Edwards, acting on behalf of herself and Alfred Edwards, Jr., fraudulently persuaded Teresita Edwards to come to the United States by promising her employment as a housekeeper.  *See* Exhibit A (Statements of Facts agreed to by Defendants in *United States v. Edwards, et al.*, Case No. 8:11-cr-00316 (D. Md. 2011)).

10.      Gloria Edwards promised Teresita Edwards that she would earn wages for her labor.

11.      Based upon Gloria Edwards's promises of gainful employment, and believing that working as a housekeeper would allow her to provide a better life for her eight children in the Philippines, Teresita Edwards agreed to travel to the United States.  *See* Exhibit A.

12.     Upon information and belief, in October 1998, Gloria Edwards obtained a B1 (temporary business visitor) visa for Teresita Edwards.  Defendants paid a third party to bring Teresita Edwards to the United States.  *See* Exhibit A.

13.     In April 1999, at the direction of Defendants, the third party delivered Teresita Edwards to Defendants.  Soon after her arrival, Defendants seized her immigration documents (including her passport, birth certificate, and visa).  Defendants did not return the documents for the more than ten years during which they imprisoned her in their home.

14.     Only after Teresita Edwards arrived at Defendants' home in Upper Marlboro, Maryland, did she learn that she would receive little or no pay, but would be responsible for all the household duties, including cooking, cleaning, ironing, and gardening services.  Her extensive duties also included providing Gloria Edwards's mother with massages in the evenings.

15.     Defendants also fraudulently forced Teresita Edwards to sign a document stating that if she left their home, she would be required to pay Defendants $20,000.  Defendants frequently used this $20,000 penalty as a threat to frighten Teresita Edwards and prevent her from running away.  As a result, Teresita Edwards believed she had no choice but to stay in Defendants' employ.  She believed that she could never pay Defendants such a large amount of money.

**B.      Plaintiff's Forced Marriages, Isolation, and Confinement**

16.     In July 1999, knowing that Teresita Edwards's B1 visa was set to expire, Defendants forced her to enter into a sham marriage so that she could remain in the country and continue to work as Defendants' domestic servant.  *See* Exhibit A.  At that time, she was still married to her husband in the Philippines, which Defendants knew.  She had only met the man Defendants selected for her to marry twice prior to the marriage that Defendants arranged.

17.     Upon information and belief, Defendants forced Teresita Edwards into a sham marriage to facilitate their scheme of obtaining forced labor and services from her.

18.     Defendants arranged a divorce between the "husband" and Teresita Edwards in November 2000.

19.     In December 2000, Defendants forced Teresita Edwards into a marriage with defendant Alfred Edwards, Jr.'s brother, David Edwards, who suffered from diabetes, incontinence, and related conditions.  David Edwards was also diagnosed with dementia.  These conditions caused him to require extensive personal care.

20.     Upon information and belief, Defendants forced Teresita Edwards into a second marriage so that she could remain in the United States and continue to work as Defendants' unpaid domestic servant.  Defendants also expanded her duties to include home care for David Edwards.  Defendants procured a Green Card (permanent residency) for Teresita Edwards based on this forced marriage.

21.     Defendants confiscated Teresita Edwards's Green Card.  Defendants also changed Plaintiff's name to Teresita Edwards.

22.     Throughout the entire period of her captivity, Defendants restricted Teresita Edwards's freedom of movement.  She was constantly monitored.  Defendants refused to allow her to have any unsupervised contact with her family in the Philippines.  When Defendants did permit her to speak with her family by telephone, they dictated what she was allowed to say.  During these conversations, Defendants monitored her so that she could not speak freely about the circumstances in which she was living.  Defendants also refused to allow her to use the telephone or to have a cellular telephone.

23.     Defendants kept Teresita Edwards in isolation, and only permitted her to leave their residence with permission.  Defendants refused to allow her to see a doctor, even when she was ill.

**C.**      **Plaintiff's Ten Years of Forced Labor and Involuntary Servitude**

24.      From her arrival in the United States in May 1999, Teresita Edwards was forced to work as a domestic servant in Defendants' home in Upper Marlboro, Maryland.

25.      Teresita Edwards was required to work seven days per week for approximately thirteen hours or more per day.  She was forced to perform the following work:

     a.   Cooking:  She was forced to cook separate meals for Gloria Edwards, Alfred Edwards, Jr., and David Edwards;

     b.   Cleaning:  She was forced to clean the house, including vacuuming, dusting, cleaning the floors, cleaning the gutters, and cleaning the kitchen.  She was also forced to clean inside and outside of a rental building owned by Defendants;

     c.   Caretaker:  She had to take care of David Edwards, who was severely ill, including lifting him and cleaning up after bouts of incontinency;

     d.   Massages:  She was often required to provide massages for Gloria Edwards's mother, who also lived in Defendants' home;

     e.   Other duties:  She was also forced to perform other household duties such as ironing and gardening services.

26.      Defendants never paid Teresita Edwards for her work.  Furthermore, although Defendants claimed to have sent money to Teresita Edwards's children in the Philippines, upon information and belief, little money was actually sent to her children.

27.      Defendants posted no notice of Teresita Edwards's rights as a domestic worker under federal or state law.

28.     At all times, Teresita Edwards had only limited proficiency in the English language.  At no point did she know or receive actual notice of her rights as a domestic worker.

29.     Beginning in early 2000, some of Teresita Edwards's children, who remained in the Philippines, began living in an apartment complex in Manila owned by Defendants.  Gloria Edwards demanded that Teresita Edwards pay Defendants rent each month to pay for the children to stay in the apartment.  Additionally, Defendants required Teresita Edwards's oldest daughter to manage the apartment building in the Philippines.

30.     In order to pay Defendants the rent demanded of her, Teresita Edwards had to clean neighbors' houses and the houses of Defendants' friends and family.

31.     In November 2002, Teresita Edwards attempted to flee from Defendants' home in Upper Marlboro, Maryland.

32.     Upon learning of Teresita Edwards's location, Alfred Edwards, Jr. took her back to Defendants' residence.  He told her that if she ran away again, he had a gun and would shoot her.

33.     Teresita Edwards resumed her work as a domestic servant in Defendants' home, working seven days per week for approximately thirteen hours or more per day, performing cooking, cleaning, ironing and gardening services without pay as described above.

**D.      Defendants' Abuse of Plaintiff**

34.     From May 1999 to 2009, Defendants confined Teresita Edwards in their home and forced her to work as their domestic servant.  During this period, Defendants physically and psychologically abused Teresita Edwards.

35.     Defendants frequently threatened Teresita Edwards with physical and financial harm.  Gloria Edwards abused Teresita Edwards physically by hitting and pinching her.  Gloria Edwards also

threatened Teresita Edwards with kitchen knives.  Alfred Edwards, Jr. put his hand in Teresita Edwards's pants without her permission.

36.     Defendants physically abused David Edwards in front of Teresita Edwards, which intimidated and frightened her.

37.     Because of the physical and emotional abuse and threats that she was subjected to, Teresita Edwards felt that she had no alternative but to continue to work for Defendants and remain in their home.

### E.     Defendants' Continued Threats

38.     In 2009, Teresita Edwards again fled from Defendants' home.

39.     On December 22, 2009, Teresita Edwards spoke with Defendants by telephone.  Gloria Edwards called her demeaning names and demanded that she pay Defendants $20,000.  Gloria Edwards threatened Teresita Edwards by telling her that if she failed to pay, she would be "done."

40.     Based on Gloria Edwards's threats, Teresita Edwards was under extreme duress and feared that if she did not return to Defendants' home and did not pay Defendants $20,000, Defendants would harm Teresita Edwards or her children.

41.     Defendants intentionally and fraudulently led her to believe that she was legally required to provide services to Defendants, and if she left, they would take action against her, including enforcement of the $20,000 penalty.

42.     As a result of Defendants' conduct, Teresita Edwards has difficulty sleeping, eating, concentrating, and trusting people.  She also lives in fear that Defendants will harm her or her family in the Philippines.  She cries constantly.  She suffers from anxiety, dizziness, vomiting, headaches, shortness of breath, and nightmares due to what Defendants did to her.  She must attend art therapy to

deal with her trauma.  She has also developed a propensity for illness based on the harms that she suffered at the hands of Defendants.

**F.**   **Criminal Prosecution of Defendants**

43.    On June 6, 2011, a Grand Jury in the United States District Court for the District of Maryland returned a five-count criminal indictment against Defendants, alleging Forced Labor Conspiracy, in violation of 18 U.S.C. § 371, Forced Labor and Attempted Forced Labor, in violation of 18 U.S.C. §§ 1589, 1594(a), Document Servitude, in violation of 18 U.S.C. § 1592(a), and Conspiracy to Harbor for Financial Gain and Harboring Domestic Worker for Financial Gain, in violation of 8 U.S.C. § 1324(a)(1)(A).

44.    On May 29, 2012, Defendants each pleaded guilty to one count of a Superseding Indictment that charged them with Harboring an Alien for Financial Gain, in violation of 8 U.S.C. § 1324(a)(1)(A).  Defendants await sentencing for their crimes.

## CLAIMS FOR RELIEF

### COUNT I

**(Forced Labor in Violation of the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. §§ 1589, 1595)**

45.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth herein.

46.    18 U.S.C. § 1589(a) provides that it is unlawful to "knowingly provide[] or obtain[] the labor or services of a person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if

that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

47.     As alleged herein, Defendants knowingly obtained Plaintiff's labor and services by means of force, threats of force, physical restraint, or threats of physical restraint; serious harm or threats of serious harm; abuse or threatened abuse of law or legal process; and/or a scheme, plan, or pattern intended to cause Plaintiff to believe that, if she refused to work for Defendants, she or her family in the Philippines would suffer serious harm or physical restraint, in violation of the Forced Labor provision of the TVPA, 18 U.S.C. § 1589(a).

48.     Defendants threatened to shoot Plaintiff or cause her bodily harm if she attempted to leave their residence.  Such threats constituted threats of force or serious harm under 18 U.S.C. § 1589(a)(1) and (2).

49.     Defendants fraudulently threatened Plaintiff that if she fled their captivity, she would owe them $20,000.  These threats constitute an abuse of the legal process under 18 U.S.C. § 1589(a)(3).

50.     Defendants executed a scheme or plan to cause Plaintiff to believe that she and her children would suffer serious harm if she left Defendants' residence by fraudulently requiring Plaintiff to sign a document stating that she would be required to pay Defendants $20,000 if she left and by controlling Plaintiff's children's living conditions.  Such a scheme is prohibited by 18 U.S.C. § 1589(a)(4).

51.     Plaintiff brings this claim for relief pursuant to 18 U.S.C. § 1595.

52.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be established at trial.

53.     Plaintiff is entitled to recover damages to account for the full value of her losses, including but not limited to emotional distress, lost wages, punitive damages, and other losses suffered by Plaintiff as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

## COUNT II

### (Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of the TVPA, 18 U.S.C. §§ 1590, 1595)

54.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 53 as though fully set forth herein.

55.     18 U.S.C. § 1590(a) provides that it is unlawful to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for [peonage, slavery, involuntary servitude, or forced labor]."

56.     As alleged herein, Defendants knowingly recruited, harbored, transported, provided and/or obtained Plaintiff for the purpose of involuntary servitude and forced labor in violation of the trafficking provision of the TVPA, 18 U.S.C. § 1590(a).

57.     As alleged herein, Defendants attempted to and did violate the prohibitions against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a).

58.     Plaintiff brings this claim for relief pursuant to 18 U.S.C. § 1595.

59.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be established at trial.

60.     Plaintiff is entitled to recover damages to account for the full value of her losses, including emotional distress, lost wages, punitive damages, and any other losses suffered by Plaintiff as

a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

### COUNT III

**(Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude or Forced Labor in Violation of the TVPA, 18 U.S.C. §§ 1592, 1595)**

61.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 60 as though fully set forth herein.

62.     18 U.S.C. § 1592(a) provides that it is unlawful to "knowingly destroy[], conceal[], remove[], confiscate[], or possess[] any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person . . . in the course of a violation of . . . [or] with intent to violate [the provisions prohibiting trafficking, peonage, slavery, involuntary servitude, or forced labor]; or . . . to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons."

63.     22 U.S.C. § 7102(8)(B) states that a "severe form[] of trafficking in persons" includes "the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery."

64.     As alleged herein, Defendants knowingly confiscated and possessed Plaintiff's passport, birth certificate, visa, and Green Card in the course of violating and with intent to violate 18 U.S.C. §§ 1584 and 1589, prohibiting involuntary servitude and forced labor.

65.     As alleged herein, Defendants attempted to and did violate the prohibitions against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a).

66.     As alleged herein, Defendants also knowingly confiscated and possessed Plaintiff's passport, birth certificate, visa, and Green Card in order to prevent or restrict or attempt to prevent or restrict Plaintiff's ability to leave Defendants' residence in order to maintain Plaintiff's labor and services.

67.     As alleged herein, Defendants recruited, harbored, transported, provided for, and/or obtained Plaintiff for labor or services through the use of force, fraud, or coercion.

68.     Plaintiff is or has been a victim of a severe form of trafficking as that term is defined by 22 U.S.C. § 7102(8).

69.     Plaintiff brings this claim for relief pursuant to 18 U.S.C. § 1595.

70.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be established at trial.

71.     Plaintiff is entitled to recover damages to account for the full value of her losses, including emotional distress, lost wages, punitive damages, and any other losses suffered by Plaintiff as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

## COUNT IV

### (Involuntary Servitude in Violation of the TVPA, 18 U.S.C. §§ 1584, 1595)

72.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 71 as though fully set forth herein.

73.     18 U.S.C. § 1584(a) makes it unlawful to "knowingly and willfully hold[] to involuntary servitude or sell[] into any condition of involuntary servitude, any other person for any term, or bring[] within the United States any person so held."

74.     "Involuntary servitude" is "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988).

75.     As alleged herein, Defendants subjected Plaintiff to involuntary servitude over a period of approximately ten years in violation of 18 U.S.C. § 1584, by use and threats of physical harm and coercion through the legal process.

76.     Defendants' threats and coercion caused Plaintiff to reasonably believe that she had no alternative but to continue her work for Defendants.

77.     Plaintiff brings this claim for relief pursuant to 18 U.S.C. § 1595.

78.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained damages, including emotional distress, economic losses, and physical injury in an amount to be established at trial.

79.     Plaintiff is entitled to recover damages to account for the full value of her losses, including emotional distress, lost wages, punitive damages, and any other losses suffered by Plaintiff as a proximate result of Defendants' conduct, and reasonable attorneys' fees for Defendants' wrongful conduct.

## COUNT V

### (Failure to Pay Federal Minimum Wage in Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206)

80.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 79 as though fully set forth herein.

81.     29 U.S.C. § 206 establishes the right of all persons who are employed to be paid a minimum wage for all hours worked.

82.     At all times relevant to this action, Defendants acted as Plaintiff's employer and Plaintiff was an employee of Defendants, for whom she performed labor and services, within the meaning of 29 U.S.C. § 203(d) and (e).

83.     At all times relevant to this action, Defendants failed and refused to pay Plaintiff minimum wage for all hours worked as required by the FLSA, causing Plaintiff to suffer damages in an amount to be established at trial.

84.     Defendants' failure to provide required compensation for all hours worked by Plaintiff constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  By virtue of Defendants' unlawful and willful failure and refusal to pay Plaintiff minimum wages and other wages and benefits to which she is entitled, Plaintiff has lost wages due to her in an amount to be established at trial.

85.     As Plaintiff's employer, Defendants are liable for Plaintiff's back pay, plus an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and any other appropriate relief under the FLSA.

## COUNT VI

**(Violation of Maryland Wage and Hour Law,
Md. Code Ann., Lab. & Empl. §§ 3-413, 415, 420, 427)**

86.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 85 as though fully set forth herein.

87.     The Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-413, 3-415, 3-420, establishes the right of all persons who are employed to be paid a minimum wage for all hours

worked and overtime pay of at least one and one-half times the person's regular rate for all hours worked in excess of 40 hours per week.

88.     At all times relevant to this action, Defendants acted as Plaintiff's employer and Plaintiff was an employee of Defendants, for whom she performed labor and services, within the meaning of the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401(b).

89.     At all times relevant to this action, Defendants failed and refused to pay Plaintiff minimum wage for all hours worked and failed and refused to pay Plaintiff the overtime premiums required by the Maryland Wage and Hour Law causing Plaintiff to suffer damages in an amount to be established at trial.

90.     Defendants' failure to provide required compensation for all hours worked by Plaintiff constitutes a willful violation of the Maryland Wage and Hour Law.  By virtue of Defendants' unlawful and willful failure and refusal to pay Plaintiff minimum wages, overtime wages and other wages and benefits to which she is entitled, Plaintiff has lost wages due to her in an amount to be established at trial.

91.     Under Md. Code Ann., Lab. & Empl. § 3-427, Defendants are liable for Plaintiff's back pay, plus reasonable counsel fees and costs, and any other appropriate relief under the Maryland Wage and Hour Law.

## COUNT VII

### (Violation of Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-502, 507)

92.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 91 as though fully set forth herein.

93.     The Maryland Wage Payment Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-502,
requires employers to set regular pay periods and to pay each employee at least once every two weeks or
twice in each month and voids any agreement to work for less than the minimum wage required under
Maryland law.

94.     At all times relevant to this action, Defendants acted as Plaintiff's employer and Plaintiff
was an employee of Defendants, for whom she performed labor and services, within the meaning of the
Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401(b).

95.     At all times relevant to this action, Defendants failed and refused to pay Plaintiff
minimum wage for all hours worked and failed and refused to pay Plaintiff overtime premiums on
regular pay periods of at least once every two weeks or twice in each month as required by the Maryland
Wage Payment Collection Law causing Plaintiff to suffer damages in an amount to be established at
trial.

96.     Defendants' failure to provide required compensation for all hours worked by Plaintiff
constitutes a willful violation of the Maryland Wage Payment Collection Law.  By virtue of Defendants'
unlawful and willful failure and refusal to pay Plaintiff minimum wages, overtime wages and other
wages and benefits to which she is entitled in regular increments, Plaintiff has lost wages due to her in
an amount to be established at trial.

97.     Under Md. Code Ann., Lab. & Empl. § 3-507, Defendants are liable for treble damages,
plus reasonable counsel fees and costs, and any other appropriate relief under the Maryland Wage
Payment Collection Law.

## COUNT VIII

### (Unjust Enrichment)

98.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 97 as though fully set forth herein.

99.     Plaintiff entered the United States with the expectation that she would provide services and be fairly compensated for such services.

100.    Instead, Plaintiff was forced to render services as an unpaid, live-in domestic servant for approximately ten years.

101.    Defendants accepted Plaintiff's services and in turn failed to compensate Plaintiff for the fair market value of her services.

102.    Defendants also profited from Plaintiff's services to others by confiscating her earnings.

103.    At all times relevant to this action, Defendants acted as Plaintiff's employer and Plaintiff was an employee of Defendants, for whom she performed labor and services, within the meaning of principles of common law.

104.    Defendants have been unjustly enriched at Plaintiff's expense.

105.    Plaintiff is entitled to recover damages due to Defendants' unjust enrichment, including unpaid wages, earnings confiscated from Plaintiff, damages arising from the delay, prejudgment interest, and any other appropriate relief.

## COUNT IX

### (Battery)

106.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 105 as though fully set forth herein.

107.    Defendants committed a battery on Plaintiff by intentionally bringing about harmful and/or offensive contact upon Plaintiff.

108.    Defendants' harmful and/or offensive conduct consisted of Gloria Edwards prodding Plaintiff with knives, striking Plaintiff, and pinching Plaintiff; and Alfred Edwards Jr. putting his hand in her pants, all of which was done without Plaintiff's permission or consent.

109.    Defendants' battery as alleged herein constituted an intentional touching of Plaintiff and was undertaken deliberately and with actual malice, spite, and ill will.

110.    As a result of Defendants' conduct in perpetrating the battery, Plaintiff is entitled to recover substantial damages, including physical injuries, physical pain and suffering, humiliation, mental distress, and any other appropriate relief in an amount to be established at trial.

## COUNT X

### (False Imprisonment)

111.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 110 as though fully set forth herein.

112.    Defendants caused Plaintiff, through force and physical and psychological coercion, to be deprived of her liberty and unlawfully imprisoned in Defendants' home against her will and without legal justification.  Plaintiff was not free to leave Defendants' control.

113.    Specifically, Defendants seized Plaintiff's travel documents, threatened bodily harm against Plaintiff, and physically abused Plaintiff to prohibit her from leaving their residence.  Defendants also threatened that Plaintiff would have to pay them a $20,000 penalty if she left their home.

114.    Plaintiff was unlawfully detained against her will by Defendants for over ten years.

115.    As an actual and direct consequence of Defendants' actions in depriving Plaintiff of her liberty, Plaintiff suffered damages, including emotional and psychological distress, pain and humiliation,

economic injury from being deprived of the ability to go about her personal affairs, and other injuries in an amount to be established at trial.

## COUNT XI

### (Fraud and Deceit)

116.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 115 as though fully set forth herein.

117.    Gloria Edwards, acting on behalf of Defendants, made a material false representation of ascertainable fact to Plaintiff when, in 1998, while visiting the Philippines, Gloria Edwards recruited Plaintiff to come to the United States and work as a domestic servant.

118.    Gloria Edwards told Plaintiff that she would come to the United States in order to earn wages.  Furthermore, Gloria Edwards promised to assist Plaintiff with sending this money back to her family in the Philippines.

119.    However, Defendants never intended to fulfill the promises made to Plaintiff, but rather intended to bring Plaintiff to the United States to work as Defendants' domestic servant without pay or the ability to leave Defendants' control.

120.    At the time Defendants made these representations, they knew them to be false or made the representations with such reckless indifference to their truth as to be equivalent to actual knowledge of the falsity of the statements.

121.    Defendants' representations were made with the express and/or implied intent of defrauding Plaintiff.

122.    Plaintiff reasonably and justifiably relied on Defendants' promises of legal employment in the United States in full belief of the statements' truth.

123.     Plaintiff would not have worked for Defendants or come to the United States had Defendants not made such misrepresentations.

124.     As a direct and/or proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered damages in an amount to be established at trial.

## COUNT XII

### (Negligent Misrepresentation)

125.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 124 as though fully set forth herein.

126.     Defendants owed a duty of care to Plaintiff, which required the communication of truthful information to Plaintiff.

127.     Defendants' duty of care arose by virtue of the close relationship between Gloria Edwards and Plaintiff at the time Plaintiff accepted Defendants' offer to come to, and work in, the United States.  Defendants' duty required the transmittal of accurate information from Defendants to Plaintiff.

128.     Prior to Plaintiff coming to the United States and working for Defendants, Gloria Edwards, acting on behalf of Defendants, negligently made false, material representations of ascertainable fact to Plaintiff including, but not limited to, the representation that Plaintiff would be gainfully employed when she entered the United States and that she would earn wages for her work.

129.     Defendants made these false representations to the Plaintiff to induce Plaintiff to rely on them and act upon them by entering the United States.  Defendants uttered these false representations to force Plaintiff into involuntary servitude and forced labor.

130.     Furthermore, Defendants knew or should have known that Plaintiff would rely on the misrepresentations and that the representations, if erroneous, would cause loss or injury.

131.     Plaintiff reasonably and justifiably relied on Defendants' misrepresentations.

132.     Defendants' failure to exercise due care and the negligent misrepresentations made by Defendants caused Plaintiff direct and proximate damages in an amount to be established at trial.

## COUNT XIII

### (Intentional Infliction of Emotional Distress)

133.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 132 as though fully set forth herein.

134.     Defendants intentionally inflicted emotional distress upon Plaintiff by committing, acts including, but not limited to:

   a.   Forcing Plaintiff to work seven days per week, for thirteen or more hours per day, against Plaintiff's will;

   b.   Forcing Plaintiff to enter into two marriages against her will though physical and psychological coercion;

   c.   Restricting Plaintiff's freedom of movement;

   d.   Threatening Plaintiff by making her believe that if she left Defendants' home she would be shot and/or forced to pay Defendants $20,000;

   e.   Limiting Plaintiff's contact with anyone other than Defendants, and restricting Plaintiff's contact with her children residing in the Philippines;

   f.   Physically abusing and beating David Edwards, who was extremely ill and helpless, in Plaintiff's presence; and

g.   Insulting Plaintiff with demeaning and humiliating names over an extended period while forcing Plaintiff to reside in Defendants' home.

135.   Defendants' actions were extreme and outrageous and beyond the bounds of decency in society.

136.   Defendants' acts were done intentionally, willfully, wantonly, and/or with reckless disregard for Plaintiff's rights.

137.   As a direct and proximate cause of Defendants' actions, Plaintiff suffered and continues to suffer extreme and severe emotional distress outwardly manifested by the fact that Plaintiff has difficulty sleeping, eating, concentrating, and trusting people.  Plaintiff also lives in fear that Defendants will harm her or her family in the Philippines.  Plaintiff cries constantly.  Plaintiff suffers from anxiety, dizziness, vomiting, headaches, shortness of breath, and nightmares due to what Defendants have done to her.  She attends art therapy to deal with her trauma.  Plaintiff has also developed a propensity for illness based on the harms that she suffered at the hands of Defendants.

138.   Plaintiff is entitled to damages based on Defendants' conduct in an amount to be established at trial.

## COUNT XIV

### (Conspiracy)

139.   Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 138 as though fully set forth herein.

140.   Defendants conspired and agreed with one another to unlawfully commit the tortious acts described herein.

141.    The tortious acts, or the tortious means used to accomplish an act not in itself tortious, were done in furtherance of the conspiracy.

142.    Defendants' conduct was oppressive, malicious, intentional, and done with specific intent to harm Plaintiff.

143.    The tortious act or acts, or the tortious means used to accomplish an act not itself tortious, directly and proximately caused damage to the Plaintiff in an amount to be established at trial.

## COUNT XV

### (Punitive Damages)

144.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 143 as though fully set forth herein.

145.    Defendants' tortious conduct as alleged herein was undertaken deliberately and with actual malice, that is, with a sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud.

146.    Defendants' conduct involved reckless or callous indifference to the federally- and state-protected rights of Plaintiff causing Plaintiff severe financial, emotional, and physical harm.

147.    Plaintiff is entitled to an award of punitive damages based upon Defendants' malicious conduct in an amount to be determined at trial.

## REQUEST FOR RELIEF

148.    WHEREFORE, Plaintiff demands judgment against all Defendants and respectfully requests the following relief:

    a.  Award monetary damages for each Claim for Relief;

b.  Award unpaid minimum wages, overtime wages, and other wages to which Plaintiff is entitled under law;

c.  Award liquidated damages in an amount equal to Plaintiff's unpaid wages for Defendants' willful violations of the FLSA;

d.  Award treble damages for Defendants' violations of the Maryland Wage Payment and Collection Law;

e.  Award such actual, incidental, and consequential damages resulting from Defendants' unjust enrichment;

f.  Award such damages to compensate Plaintiff for physical and emotional injuries, pain and suffering, humiliation, and mental and emotional distress suffered as a result of Defendants' unlawful conduct;

g.  Award such punitive and exemplary damages according to proof;

h.  Award such costs and reasonable attorneys' fees to which Plaintiff is entitled by law; and

i.  Award such other relief as this Court may deem just and appropriate.

Plaintiff demands a trial by jury.


Dated: December 21, 2012         By:  _____/s/_____
                                      James L. Quarles
                                      Dist. of Md. Bar No. 11194
                                      Wilmer Cutler Pickering Hale and Dorr LLP
                                      1875 Pennsylvania Avenue NW
                                      Washington, DC 20006
                                      Tel:  202-663-6000
                                      Fax: 202-663-6363
                                      Email: James.Quarles@wilmerhale.com